UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CALVIN ROUSE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DOUG WADDINGTON *et al*.,<br><br>　　　　　　Defendants. | Case No. C06-5183RJB/JKA<br><br>REPORT AND<br>RECOMMENDATION<br><br>**NOTED FOR:**<br>**December 26, 2008** |

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrate Judges' Rules MJR 1, MJR 3, and MJR 4. Before the court is defendants' motion for summary judgment (Dkt. # 70 and 71). Plaintiff has responded (Dkt # 88). Defendants have replied (Dkt # 89). The matter is now ripe for review.

A discovery dispute and failure to calendar a changed date for the summary judgment motion have delayed consideration of defendants' motion. Having reviewed the file and pleadings the court recommends defendants motion for summary judgment be **GRANTED**, and that action be **DISMISSED WITH PREJUDICE.**

PROCEDURAL HISTORY

The operative complaint in this action is the second amended complaint filed in response to a motion for a more definite statement (Dkt. # 49). Because plaintiff was ordered not to raise new issues or add

defendants, the complaint is limited to three issues (Dkt. # 56 and 59). Those issues are:

1. Plaintiff alleges his placement in administrative segregation on July 2, 2005, and on July 16, 2005 were improperly based on his race and religion.

2. Plaintiff complains of allegedly inadequate medical care up to September 29, 2008, when he was diagnosed as suffering from MYRSA, (MYRSA is a antibiotic resistant skin eating bacterial infection that can be life threatening).

3. Plaintiff complains regarding a use of force on September 29, 2008, in the hospital area.

(Dkt. # 49).

## FACTS

Plaintiff was moved from general population to administrative segregation on July 2, 2005, pending an investigation. It was alleged he had threatened his cell mate. The investigation was conducted quickly and he was released from segregation on July 8, 2005 (Dkt. # 70, Exhibit 1, attachments A through F). The Sergeant who conducted the investigation, Sergeant Miller, was the same person who had asked for permission from the shift lieutenant, to segregate plaintiff. Sergeant Miller determined there was no evidence plaintiff had in fact threatened his cell mate and plaintiff did not have a history of similar conduct.

Plaintiff was again placed in administrative segregation on July 16, 2005, when his cell mate was found unconscious in the cell (Dkt. # 88, page "25"). This is not the same inmate Plaintiff was suspected of threatening on July 8, 2005. This cell mate was allegedly a white supremacist and plaintiff alleges he is a black Muslim (Dkt. # 12). Plaintiff was again only in segregation for a few days and was released on July 19, 2005, after prison officials confirmed plaintiff's cell mate had fallen from his upper bunk and had not been assaulted.

The use of force stems from issues surrounding medical treatment. Placing the facts surrounding medical treatment before the use of force may be of some benefit. As early as August 31, 2005, plaintiff was being treated for allergies (Dkt. # 70, Exhibit 4)(medication causing dry nasal passages was discontinued on that date). Two days later plaintiff was seen for a skin rash (Dkt. # 70, Exhibit 4). Plaintiff was treated. Eleven days later, on September 13, 2005, he requested stronger medication and stated the sores on his skin were not healing. He was seen the next day, September 14, 2005, and provided a triple strength antibiotic ointment (Dkt. # 70, Exhibit 4).

By September 25, 2005, plaintiffs' rash was worse. Plaintiff alleges he showed his arm to a Captain and the Captain directed him back to medical for further treatment. On September 25, 2005, plaintiff was seen

1 and diagnosed as suffering from a possible skin infection. He was treated and told to return to medical daily
2 for dressing changes. He was seen on September 26, 2005, and a wound was drained. Samples were sent for
3 testing and it was suspected plaintiff may be suffering from MYRSA, (Methicillin Resistant Staphylococcus
4 Aureus).

On September 29, 2005, plaintiff went to the medical area. The parties disagree as to the facts surrounding the use of force that occurred. Plaintiff alleges hospital staff was rude to him and he decided to leave. In the first amended complaint he alleges he refused treatment and tried to return to his cell (Dkt. # 19, original complaint). Plaintiff alleges he was kept in the hospital area in an attempt to force him to accept treatment and when he attempted to leave he was confronted by aggressive officers one of whom grabbed his right arm which caused him pain. (Dkt. # 19). In later pleadings, plaintiff contends he was denied medical care, not that he refused treatment (Dkt. # 49). Plaintiff alleges he complied with staff orders and was assaulted (Dkt. # 19 and 49) .

In the use of force report, (Dkt. # 70, Exhibit 2 affidavit of Roberts, attachment A), defendants contend plaintiff was in the clinic area for a dressing change and refused to leave the clinic area and wait in the waiting room (Dkt. # 70, Exhibit 2 affidavit of Roberts, attachment A). Defendants state that plaintiff demanded to leave the medical unit and return to his cell during a non-movement time, (prisons are shut down and no movement of inmates is allowed until the facility has counted and accounted for the whereabouts of every inmate in the facility. These non- movement periods, occurs several times a day at most prisons). Defendants state that plaintiff refused to wait in the waiting room when ordered to do so (Dkt. # 70 Exhibit 2).

Additional staff was called to the medical area to contain a disruptive inmate. A Sergeant, Richard Roberts, ordered plaintiff to stand for a search and place his hands against the wall. The parties agree that plaintiff was compliant until the point where Sergeant Roberts reached for plaintiffs right hand to place restraints on him.

Plaintiff states he was in pain when someone grabbed his right arm where he was wounded causing him additional pain. He alleges he then defended himself (Dkt # 19).

Defendants allege that when Sergeant Roberts reached for his right arm plaintiff turned and struck the Sergeant in the face with a closed fist. Several blows were landed and after the incident the Sergeant had to be relieved from duty in order to seek medical care for his injuries (Dkt. # 70, Exhibit 2, attached use of force

REPORT AND RECOMMENDATION
Page - 3

report). Officer Richey, who had also responded to the call for assistance, was also struck the face at least twice. One of the punches causing a cut to his right eye (Dkt. # 70, Exhibit 2 affidavit of Roberts, attachment A). Officer Flemming was also struck in the head by plaintiff. Officer Flemming received further injury when Plaintiff pulled away from restraints causing Officer Flemming to cut his right hand. Five more correctional officers or sergeants, and a lieutenant arrived on the scene. Plaintiff was restrained, placed in a restraint chair, and transported to segregation. Plaintiff received serious level infractions and lost good time credits (Dkt. # 12, original complaint). The infractions were a 704 and a 717

WAC 137-28-260 defines a 704 as "assault on a staff member." WAC 137-28-260 defines a 717 as "causing a threat of injury to another person by resisting orders, resisting assisted movement or physical efforts to restrain."

It is uncontested that plaintiff filed no grievance regarding the use of force. As plaintiff received an infraction regarding this use of force, the court is not certain the grievance process was available to plaintiff. "**[D]isciplinary actions**; and several other aspects of incarceration. Administrative segregation, classification, **and disciplinary issues** are not grievable because these areas have their own appeal process.**"** (Dkt # 70, Exhibit 5 ¶ 4, emphasis added). Thus, any attempt to file a grievance may have been barred because the facts were considered in a disciplinary hearing.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

the differing versions of the truth. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.(relying on <u>Anderson</u>, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

1. <u>Placement in administrative segregation and equal protection.</u>

Plaintiff cannot bring a claim for denial of Due Process regarding his placement in administrative segregation, because he has no liberty interest in remaining in general population. <u>Smith v Noonan</u>, 992 F.2d 987 (9th Cir. 1993). Thus, plaintiff had no right to due process prior to placement in Administrative Segregation. His argument that the Shift Lieutenant had not signed the segregation authorization given to him is without merit.

The viable claim is an Equal protection claim. Plaintiff alleges he was discriminated against because of his race and religion.

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. <u>City of Cleburne v. Cleburne Living Ctr.</u>, Inc., 473 U.S. 432, 439, (1985); <u>Jones Intercable v. City of Chula Vista</u>, 80 F.3d 320, 327 (9th Cir.1996). Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). To establish a violation of equal protection, a plaintiff must show that he or she received treatment invidiously dissimilar to that received by other inmates. <u>Divers v. Department of Corrections</u>, 921 F.2d 191, 193 (8th Cir.1990). In addition, a plaintiff must demonstrate

that defendants acted with the intent to discriminate. <u>Sischo-Nownejad v. Merced Community College Dist.</u>, 934 F.2d 1104, 1112 (9th Cir. 1991). Discriminatory intent may be proven directly or through circumstantial evidence. <u>See</u> <u>Lowe</u> v. <u>City of Monrovia</u>, 775 F.2d 998, 1011 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986). Allegations of discrimination that are conclusory cannot withstand a motion for summary judgment. <u>See</u> <u>Forsberg v. Pac. Northwest Bell Tel. Co</u>., 840 F.2d 1409, 1419 (9th Cir. 1988).

Plaintiff has come forward with no evidence to show a discriminatory intent. Plaintiff was first placed in administrative segregation when his cell mate alleged he had been threatened. The situation was investigated. Plaintiff was released from administrative segregation when the alleged threat could not be confirmed. He was in segregation for just under one week. Placement in administrative segregation, for a short time, while a potentially dangerous situation is investigated is one of the reasons administrative segregation exists. <u>See</u>, <u>Smith v Noonan</u>, 992 F.2d 987 (inmate placed in administrative segregation while allegations he threatened an inmate and staff member were investigated). Plaintiff does not show he was treated differently from other inmates.

Plaintiff's second placement in administrative segregation was for even clearer penological reasons. When plaintiff's cell mate was found unconscious in their cell, it was reasonable for prison officials to presume there may have been an altercation between plaintiff and his cell mate. Placement in administrative segregation pending determination as to what happened would be a natural step in defusing a potentially violent situation. Plaintiff offers nothing but speculation that the actions taken were based on his race or religion. Allegations of discrimination that are conclusory cannot withstand a motion for summary judgment. <u>See</u> <u>Forsberg v. Pac. Northwest Bell Tel. Co</u>., 840 F.2d 1409, 1419 (9th Cir. 1988).

Plaintiff's claims regarding equal protection fail as a matter of law. Defendants motion for summary judgment should be **GRANTED** on this issue.

2. <u>Medical care</u>.

The government has an obligation to provide medical care for prisoners. The Eighth Amendment proscribes deliberate indifference to their serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). Such conduct is actionable under 42 U.S.C. § 1983. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992)(reversed on other grounds by <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, (9th Cir. 1997)).

To establish deliberate indifference, a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. McGuckin, 974 F.2d at 1060; Estelle, 429 U.S. at 104. A determination of deliberate indifference involves an examination of two elements: 1) the seriousness of the prisoner's medical need and; 2) the nature of the defendant's response to that need. McGuckin, 974 F.2d at 1059. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id.

In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. McGuckin, Id. at 1060. A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a section 1983 claim. Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Further, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. McGuckin, 974 F.2d at 1060; Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Here, plaintiff began showing symptoms in early September of 2005. He was diagnosed as suffering from allergies and he was treated. In mid September, at his request, the strength of the medication was increased, but medical personnel still thought they were addressing allergies. It was not until late September when prison officials ran tests and began to think plaintiff may be suffering from a more serious condition. Once test results confirmed plaintiff had a more serious condition appropriate treatment was started.

Even after the use of force on September 29, 2005, plaintiff was seen and treated in the Intensive Management Unit (Dkt # 70 Exhibit 4). Contrary to plaintiff's contentions, he was examined after the use of force by medical personnel, RN Engle, in the Intensive Management Unit (Dkt # 70 Exhibit 2, attachment A). RN Engle is not a named defendant in this action.

Plaintiff fails to show any defendant was deliberately indifferent to his medical needs. Defendants motion for summary judgment should be **GRANTED** on this issue.

3. Use of force.

The use of excessive force by a law enforcement states a valid claim under 42 U.S.C. § 1983. The

threshold inquiry for such a claim is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 112 S.Ct. 995, 999 (1992). Wilson v. Seiter, 111 S.Ct. 2321, 2324 (1991). The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 U .S. 386, 397 (1989).

While plaintiff claims he complied with defendants orders, defendants records reflects he refused to stay in the waiting room during a "non-movement"period. Defendants records also reflect plaintiff physically resisted being placed in restraints. It is uncontested that plaintiff struck a Corrections Sergeant and several Corrections Officers with closed fists. The extent of injury to the staff members belies plaintiff's assertions he was compliant with their orders.

In an excessive force cause action such as this one, each movement leading up to and including the use of force must be examined. It is irrelevant how plaintiff entered the medical unit or why he was there. Plaintiff sought to leave the medical unit and return to his cell. He does not contest the facility was in a non-movement period when he attempted to leave. When ordered to stand for a search he complied. It is only when the Sergeant reached for his right arm to place him in cuffs that force was used. The force was Sergeant Roberts attempting to move plaintiffs right arm behind his back so that physical restraints, hand cuffs, could be placed on the plaintiff.

It is irrelevant that the movement caused plaintiff pain or that his arm was sore. The force was applied in an effort to maintain discipline. Plaintiff resisted the attempt to place him in restraints and became a physical combatant. The amount of force used to subdue him was appropriate given that plaintiff was throwing closed fisted punches and inflicted injury on at least three officers.

Plaintiff fails to show the defendants acted with a culpable state of mind. The defendants actions were objectively reasonable given that they were confronted with an inmate refusing orders and attempting to leave an area during non-movement. Plaintiff's claims regarding the use of force fail as a matter of law. Defendants motion for summary judgment should be **GRANTED**.

4.      Other issues.

Defendants contend plaintiff did not exhaust his administrative remedies regarding the use of force

REPORT AND RECOMMENDATION
Page - 8

issue. The prison policy regarding grievances does not allow a grievance if there is a separate appeal process for the issue. Here, plaintiff was infracted and the facts or issues surrounding the use of force could be addressed in the infraction appeal process. Thus a grievance may not have been accepted. Defendants also raise lack of personal participation and Qualified immunity arguments. While these arguments have merit, the court does not address them in light of the report and recommendation that the action be dismissed on the merits.

## CONCLUSION

Defendants motion for summary judgment should be **GRANTED**. This action should be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 26, 2008**, as noted in the caption.

DATED this1 day of December, 2008.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate grievance